IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA RUSSELL, AND ALL OTHERS SIMILARLY SITUATED,** *Plaintiff*, <br><br> v. <br><br> **EQHEALTH SOLUTIONS, INC.,** *Defendant*. | Civil Action No. |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff Melissa Russell ("Plaintiff" or "Russell") brings this action individually and on behalf of those similarly situated against Defendant eQHealth Solutions, Inc. ("EQS" or "Defendant"), and in support shows the Court the following:

### I.     SUMMARY

2.     This is an opt-in collective action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq, ("FLSA").

3.     Defendant employed Plaintiff and the FLSA Class Members as "CMEs" whose job duties included (1) communicating with and gathering data from members to document members' medical circumstances in Defendant's computer system ("Data Collection"); (2) inputting member data into Defendant's computer system ("Data Entry"); (3) using established guidelines to maximize utilization of plan resources through application of predetermined criteria ("Care Utilization"); (4) providing information to members and providers regarding plan benefits and resources to address members healthcare needs ("Plan Education"); and (5) and working with members and providers to set up medical care ("Care Setup") (collectively, "Care Management Work").

4.  Defendant misclassified CMEs as exempt from federal and state mandated overtime pay, paid them a salary and refused to pay them overtime pay despite them regularly working over 40 hours per workweek ("OT Misclassification Policy").

## II.   PARTIES

3.  Plaintiff Russell worked for Defendant as a "CME" for over 40 hours during one or more workweeks during the last three years. Defendant referred to Plaintiff's specific job title in multiple ways during her employment, including referring to her job title as "Care Coordinator," "Pediatric Care Coordinator," "Utilization Review Nurse," and "UM Coordinator."

4.  Plaintiff brings this action on behalf of those similarly situated pursuant to the FLSA ("FLSA Class Members"). The FLSA Class Members include, without limitation, such job titles as "Care Coordinator," "Pediatric Care Coordinator," "Utilization Review Nurse," "Utilization Review Coordinator," and other job titles performing the same or similar work that Defendant subjected to the OT Misclassification Policy.

5.  Defendant eQHealth Solutions, Inc. is a Louisiana corporation that has appointed Glen J. Golemi, 8440 Jefferson Highway, Suite 101, Baton Rouge, LA 70809 as its agent for service of process.

## III.   JURISDICTION AND VENUE

6.  This Court has jurisdiction over Plaintiff's FLSA claim because that claim arises under federal law pursuant to 29 U.S.C. § 216(b) and pursuant to 28 U.S.C. § 1331.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and operative facts forming the basis of the suit occurred in this District.

## IV.   COVERAGE

8.  At all material times, Defendant acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiff and the FLSA Class Members.

9. At all times hereinafter mentioned, Defendant has been an employer or joint employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). Plaintiff and the FLSA Class Members specifically handled materials, including computer and other equipment, to conduct medical assessments.

12. At all times hereinafter mentioned, Plaintiff and the FLSA Class Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 203(e)(1).

**V.  FACTUAL ALLEGATIONS**

13. Plaintiff incorporates all allegations previously made in this Complaint by reference.

14. Defendant has had business operations throughout the United States, including in Louisiana and this Judicial District, throughout the last three years. Their annual gross volume of sales made and business done exceeded $500,000.00 per year at all relevant times.

15. Defendant is a "population health management and healthcare IT solutions company" that provides care coordination and utilization review services to its customers. These services attempt to reduce overall medical care costs through prevention, early detection and coordination between

various health service providers. Defendant employs salaried individuals who help provide the care coordination and utilization review services to Defendant's customers. Defendant assigns these "Care Management Employees" or "CMEs" various job titles, including Care Coordinator, Utilization Review Nurse, and Pediatric Care Coordinator.[1]

16. Plaintiff worked as a CME for Defendant from approximately August 2014 to March 2017.

17. As a CME, Plaintiff's primary job duties included Data Collection, Data Entry, Care Utilization, Plan Education, and Care Setup job functions.

18. These "Care Management Work" job duties did not involve providing nursing care in a clinical setting or direct medical care to members.

19. These "Care Management Work" job duties also did not include the exercise of discretion or independent judgment with respect to matters of significance. Rather, they involved applying and communicating Defendant's guidelines policies and procedures for the approval and coordination of healthcare benefits.

---

[1] *See e.g.* www.eqhs.org/Solutions/eQCare/Care-Coordination-Services (indicating on website that EQS provides care coordination services for purpose of "improving care and reducing costs" and that, "[w]ith hands-on, face-to-face Care Coordinators, the quality of care is improved and unnecessary spending is reduced, including reduced readmissions for the demographic group responsible for the highest resource utilization rates.") (last visited January 2, 2019); *see also* http://bit.ly/EQ-UM (indicating that EQS provides utilization management services to prevent "unnecessary and inappropriate medical care" to maximize the "cost efficacy of healthcare services.") (January 2, 2019); https://www.eqhs.org/Home-New ("eQHealth Solutions can provide[s] self-insured and other commercial plans with impactful care coordination and utilization management, a complete medical management system to manage your population's health…. eQHealth provides comprehensive analytics, utilization review and care coordination solutions to help identify and manage high risk Medicare and Medicaid populations.") (last visited Jan. 2, 2019); https://www.eqhs.org/About ("eQHealth Solutions…is a population health management and healthcare IT solutions company…. Our high-tech and high-touch offerings include innovative medical management systems, face to face community care coordination services, utilization review, clinical data integration and business intelligence analytical reporting – all focusing on increased quality outcomes and optimization of provider and payer networks. eQHealth serves a variety of entities across the US, including federal, state and commercial clients.") (last visited Jan. 2, 2019).

20. As a CME, Plaintiff routinely worked 55 or more hours per week during her employment.

21. Defendant did not pay Plaintiff overtime pay for all hours worked in excess of 40 hours per workweek.

22. Instead of providing Plaintiff with overtime pay, Defendant paid Plaintiff pursuant to the OT Misclassification Policy that misclassified her as exempt and paid her a salary with no overtime pay for her many hours of overtime work.

23. Defendant knew that Plaintiff worked in excess of 40 hours per week.

24. Plaintiff is entitled to receive overtime pay for all the hours they worked in excess of 40 per workweek.

25. Defendant willfully misclassified Plaintiff as exempt and refused to pay her overtime pay, despite (1) having awareness of the FLSA's minimum wage and overtime requirements; (2) routinely receiving complaints from Plaintiff and the FLSA Class Members regarding their pay and not being paid for overtime hours; and (3) paying workers who performed substantially similar, nonexempt duties on an hourly/overtime eligible basis, but choosing not to pay Plaintiff overtime.

### VI.     COLLECTIVE ACTION ALLEGATIONS

26. Plaintiff incorporates all allegations previously made in this Complaint by reference.

27. Plaintiff brings her FLSA claims as a collective action under 29 U.S.C. § 216(b).

28. The similarly situated FLSA Class Members are Defendant's current and former non-supervisory employees who worked more than 40 hours in at least one workweek over the past three years, who were paid a salary, and whose job duties included (1) communicating with and gathering data from members to document members' medical circumstances in Defendant's computer system; (2) inputting member data into Defendant's computer system; (3) using established guidelines to maximize utilization of plan resources through application

of predetermined criteria; (4) providing information to members and providers regarding plan benefits and resources to address members healthcare needs; and (5) and working with members and providers to set up medical care, or other similar work.

29. Plaintiff and the FLSA Class Members are similarly situated with respect to their job duties and pay provisions. All salaried CMEs performed the same or similar job duties: Non-exempt Care Management Work that does not involve (1) providing nursing care in a clinical setting or direct care to Defendant's customers; or (2) the exercise of discretion or independent judgment with respect to matters of significance. Defendant also subjected the similarly situated Plaintiff and the FLSA Class Members to the same pay provisions: Defendant subjected all salaried CMEs to the OT Misclassification Policy that denied them (1) overtime for all hours worked in excess of 40 hours per week; and (2) one-and-one-half times their regular rate of pay for all overtime hours worked. Accordingly, the FLSA Class Members are similarly situated to Plaintiff with respect to job duties and pay provisions.

30. Defendant's failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and do not depend on the personal circumstances of the FLSA Class Members. As employees paid on a non-exempt basis, Plaintiff and all FLSA Class Members are entitled to overtime at a rate of one-and-one-half their regular rate for all hours worked in excess of 40 per week regardless of their precise job requirements or rate of pay. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts. The questions of law and fact commonly apply to Plaintiff and all Class Members that worked for Defendant during the statutory time period.

### VII.   COUNT ONE:  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

31. Plaintiff incorporates all allegations previously made in this Complaint.

32. During the relevant period, Defendant violated and continue to violate Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing Plaintiff and other FLSA Class Members in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.

33. Defendant acted willfully in failing to pay Plaintiff and the FLSA Class Members in accordance with the law.

## VIII.  RELIEF SOUGHT

34. Plaintiff, individually and on behalf of the similarly situated FLSA Class Members, pray for judgment against Defendant as follows:

    a. For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff (and those who may join in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who may join the suit);

    b. For an award of attorneys' fees, expenses, expert fees and costs incurred by Plaintiff in vindicating her rights under applicable federal law;

    c. For a service payment to the Plaintiff for services provided on behalf of the FLSA Class Members;

    d. For an Order awarding Plaintiff (and those who may be included in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

    e. For such other and further legal or equitable relief as this Court deems to be just and appropriate.

Respectfully submitted,

*/s/ Michael A. Mahone, Jr.*

**Michael A. Mahone, Jr., Bar No. 32567**
THE MAHONE FIRM LLC
5190 Canal Blvd., Suite 102
New Orleans, Louisiana 70124
Telephone: (504) 564-7342
Facsimile: (504) 617-6474
Email: mike@mahonefirm.com

**JACK SIEGEL***
Texas Bar No. 24070621
jack@siegellawgroup.biz
**SIEGEL LAW GROUP, PLLC**
2820 McKinnon, Suite 5009
Dallas, Texas 75201
P: 214.790.4454
www.4overtimelawyer.com

**TRAVIS M. HEDGPETH***
Texas Bar No. 24074386
**THE HEDGPETH LAW FIRM, PC**
5438 Rutherglenn Drive
Houston, Texas 77096
P: (512) 417-5716
travis@hedgpethlaw.com

*\*Application for admission pro hac vice forthcoming*

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document will be served on Defendant along with a copy of the Summons for this Action.

*/s/ Michael A. Mahone, Jr.*
**MICHAEL A. MAHONE, JR.**